UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN COHEN, | CASE NO. SA CV 19-01506-DOC-(DFMx) |
| Plaintiff, | |
| vs. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND TRIAL ORDER** |
| AETNA LIFE INSURANCE COMPANY, | |
| Defendant. | |

## I. INTRODUCTION

The parties filed Trial Briefs and Responses in this matter on June 16, 2020 and July 10, 2020, respectively. Due to the COVID-19 pandemic and the Central District of California's Continuity of Operations Plan, the Court vacated the bench trial scheduled for July 21, 2020 and invited the parties to submit supplemental briefing in lieu of oral argument. *See generally* Min. Order (Dkt. 37). The parties submitted Supplemental Trial Briefs on July 19, 2020. For convenience, the Court will refer to these documents as "Pl. Br." (Dkt. 26), "Pl. Resp." (Dkt. 35), "Pl. Reply" (Dkt. 38), "Def. Br." (Dkt. 27), "Def. Resp." (Dkt. 36), and "Def. Reply" (Dkt. 39). References to the Administrative Record are denoted by numbered documents with "AR" prefixes (Dkt. 25-1).

This is a review, under the Employee Retirement Income Security Act ("ERISA"), of Defendant Aetna Life Insurance Company's ("Defendant") denial of Plaintiff Darren Cohen's ("Plaintiff") claim for disability benefits.

The Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. To the extent that any findings of fact are included in the conclusions of law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the findings of fact section, they shall be deemed conclusions of law.

## II. FINDINGS OF FACT

### A. Plaintiff's Employment and Insurance Plan

1. Before his workplace injury, Plaintiff worked at STEC, Inc., a computer data storage technology company as a Computer Systems Engineer, performing computer work 6-8 hours per day. [AR 4748–4749, 4825].
2. Defendant issued group policy number GP-888803 (the "Policy") to fund long-term disability ("LTD") benefits. [AR 2].
3. The Policy at issue provides benefits to age 67 and defines "Total Disability" as follows:

      You are deemed to be totally disabled while either of the following applies to you:

- During the period which ends right after the first 24 months benefits are payable in a period of total disability:

    You are not able, solely because of injury or disease, to perform the material duties of your own occupation; except that if you start work at a reasonable occupation you will no longer be deemed totally disabled.

- Thereafter during such period of total disability:

    You are not able, solely because of injury or disease, to work at any reasonable occupation.

You will not be deemed to be performing the material duties of your own occupation or working at a reasonable occupation on any day if:

  o you are performing at least one, but not all, of the material duties of your own occupation or you are working at any occupation (full-time or part-time); and

  o solely due to disease or injury, your income from either is 80% or less of your adjusted pre-disability earnings.

[AR 3].

4. The Policy defines "reasonable occupation" as: "any gainful activity for which you are; or may reasonably become, fitted by education; training; or experience." [AR 16].

**B. Plaintiff's Disability Claim**

5. In 2008, Cohen crashed head-first into a wall while driving a Go-Kart during an employer-sponsored event, suffering a traumatic brain injury, spinal cord compression, and exacerbating his pre-accident neck and upper extremity conditions.

3

[AR 404, 3814].

6. Plaintiff filed a worker's compensation claim in September of 2008 for trauma to his upper extremities and to the head. After 18 months out of work, he returned to work part-time on March 24, 2010 working 20 hours per week. [AR 404].

7. After the initial accident, Plaintiff submitted a claim to Aetna for long-term disability benefits. [AR 5436]. In November 2010, Aetna approved benefits retroactive to February 2009, finding that medical records support restrictions on work. [AR 5533].

8. After two years of paying benefits under the "own occupation" definition of disability, Aetna conducted a review in 2010 and 2011 to ascertain whether Plaintiff was entitled to additional benefits under the "any occupation" definition by conducting surveillance on Cohen and performing a paper review of his claims. [AR 3173–3185, 2917].

9. On December 6, 2011, Aetna terminated Cohen's benefits on the basis of a paper review, claiming that his restrictions and limitations "were not supported by the medical documentation," and concluding he could work full time. [AR 2917–2919].

10. Cohen appealed the termination decision. [AR 3238–3254, 3521–3537]. In March 2012, Aetna overturned the denial finding that "sufficient documentation exists which supports a functional impairment which precluded you from performing material duties of your own occupation on a fulltime basis as of December 5, 2011." [AR 5207].

11. In October 2012, Aetna performed an internal vocational review that determined Cohen did not have reasonable wage employability and was therefore unable to perform any reasonable occupation at his current part time restrictions (there were four positions open for full time positions). [AR 5924–5925].

12. In April 22, 2013, Defendant had Cohen undergo an Independent Medical Evaluation ("IME"), as required under the insurance policy, choosing Dr. Matthew Chan ("MC") to perform a physical examination and "Fitness for Duty Evaluation." [AR 2565–

4

2571]. MC found that Cohen "has conditions and impairments that deteriorate with prolonged sitting and repetitive hand use. As such, I agree with his current work restrictions." [AR 2571].

13. Aetna conducted another review in October 2014 and continued to approve benefits. [AR 6017].

14. Aetna conducted another review in 2015 and ordered surveillance for a second time occurring over several days in July and August of 2015. [AR 2318–2325].

15. In September 2016, Aetna's vocational consultant commented that it would be challenging to find Cohen a position with permanent part time restrictions at his high wage "at his station in life." [AR 6136].

16. In June 2016, Aetna conducted a Clinic Consultant Review and found that "it is not anticipated any significant functional improvement will occur" for Mr. Cohen. [AR 6115].

17. On July 3, 2016, Plaintiff was laid off by his employer. Cohen's layoff resulted in the elimination of the offset to his benefits from his part-time work earnings beginning in July 2016. [AR 644].

18. To date, he has not returned to work, but has returned to school in order to get into the security business and is presently seeking part-time work. [AR 6142].

19. In June 2017, Aetna ordered surveillance on Cohen for a third time. [AR 784].

20. Defendant characterized the surveillance as showing Cohen to be "very active" and performing activities that "he should avoid." [AR 6185]. Following the surveillance, Aetna again invoked the provision of the policy requiring Cohen to attend an IME.

21. The Court, having reviewed the videos, finds that they largely show Cohen performing routine activities such as walking, driving, and sitting/eating. At one point, one video clip showed Cohen performing a light jog while wearing a backpack. The Court will consider the video evidence alongside all other evidence in its final determination of whether Cohen has met his burden in this case. However,

the Court generally notes that there is a difference between performing routine activities for short periods of time and working 8 hours a day, 5 days a week performing repetitive tasks or sitting/standing for prolonged periods of time.

22. Aetna hired Dr. Elham Jafarimojarrad ("EJ") to perform an examination in February 2018. [AR 728–744]. EJ concluded that due to the bilateral median naturopathy and focal left ulnar neuropathy, Cohen needed to have an ergonomic workstation, and requires an approximate 30 minute break after two hours of computer use." [AR 742].

23. Aetna then arranged a "paper review" from Dr. Jules David Hip-Flores ("JDH"). JDH concluded that Cohen "can perform functional tasks/activities (40 hours weekly/8 hour days) in the given review period without restrictions and limitations." [AR 812].

24. Defendant terminated Cohen's benefits on July 25, 2018 finding, based on the reports from EJ and JDH and the surveillance video, there was no functional impairment that prevented Cohen from performing with reasonably continuity in an occupation to which he could reasonably be expected to perform satisfactorily. It identified a sample listing of jobs that are appropriate based upon Cohen's physical limitations, education, and work history including department manager, title search manager, and trade manager. [AR 643–649].

25. On February 12, 2019, Cohen submitted an administrative appeal. [AR 373]. In connection with his appeal, Plaintiff submitted updated medical records, as well as a personal letter and letters from his wife, friend, and mother. [AR 520–524, 578–585].

26. Plaintiff also submitted records of May 2018 MRIs conducted of Plaintiff's cervical, thoracic and lumbar spine under the supervision of Dr. Barkow. [AR 794, 797, 799]. The cervical MRI found mild degenerative findings, including mild spinal stenosis and moderate-severe left neural foraminal stenosis. [AR 795]. Disc height loss at C5-C6 slightly advanced from the previous examination. [*Id*.]. The thoracic MRI was

|     |     |
| --- | --- |
|  | "essentially unremarkable." [AR 797]. The lumbar MRI found mild degenerative findings in the lower lumbar spine without significant spinal stenosis or evidence of focal lumbar nerve impingement. [AR 800]. |
| 27. | Plaintiff also submitted his own vocational analysis performed by Linda Hayes. [AR 404–424]. In February 2019, Hayes concluded Cohen is not qualified to perform in the occupations Defendant previously asserted were available for Cohen to perform full time [AR 5924] due to limited education and lack of experience and the demands of each in terms of the amount of sitting (at least five to six hours per workday), interacting with computers (84-85% of the workday) which are beyond his capabilities. [AR 423]. Thus, Hayes found that it is "unrealistic to expect any employer to accommodate his sitting restrictions . . . Mr. Cohen meets the definition of disabled from any occupation." [AR 422]. |
| 28. | On April 2, 2019, Defendant commissioned a "transferable skills analysis" which first accepted the restrictions and limitations outlined by Dr. Neil Patel (described below) and found three jobs within 50 miles of Dana Point, CA that would allow Plaintiff to work with reasonable restrictions including no lifting more than 10 pounds frequently, typing up to 15 minutes at a time with the ability to take 5 minute breaks throughout an 8 hour day, sitting 30 minutes at a time with the ability to change positions up to 6 hours a day, among other restrictions. [AR 269–272]. This analysis did not provide records of doctors other than Dr. Patel and did not consider Hayes's vocational analysis. |
| 29. | On April 10, 2019, Defendant rejected Cohen's appeal, finding "the clinical information on file did not support a functional impairment that prevented Mr. Cohen for performing, with reasonable continuity, in any occupation in which he could reasonably be expected to perform satisfactorily, as of at least July 25, 2018." [AR 5380–5382]. |

7

### C. Timeline of Medical Findings

**Dr. Herbert Jennings ("HJ")**

30. In October and December 2008, Cohen visited HJ who diagnosed Cohen with cervical strain with radiculopathy of the right upper extremity and asked him to "continue modified [work] duty including maximum four hours computer activity per day." [AR 728, 4936, 5075].

**Dr. Zan Lewis ("ZL")**

31. Cohen visited ZL several times between 2009 and 2013. ZL restricted Cohen to part time work and limited data entry in June 2009 [AR 5104], May 2010 [AR 2880], September 2010 [AR 2765], October 2010 [AR 2775], November 2010 [AR 2788], December 2010 [AR 2794], January 2011 [AR 3646], March 2011 [AR 3653], April 2011 [AR 3666], June 2011 [AR 3672], August 2011 [AR 2882], October 2011 [AR 3564], November 2011 [AR 3506], and December 2013 [AR 2543].

**Dr. Charles Jablecki ("CJ")**

32. Plaintiff was evaluated by CJ—a neurologist and electrodiagnostic specialist at UCSD—from September 2010 until 2014. [AR 650–655].

33. CJ diagnosed Cohen with bilateral thoracic outlet syndrome, discoloration of the extremities with a positive elevated arm stress test, and abnormal arterial flow studies. Cohen was also diagnosed with cervical disc disease with midline disc pathology at C5-6 and C6-7 noted on MRI, abnormal EMG studies indicating C5-6 root pathology, a chronic bilateral L5-S1 root pathology, and a mild L4-5 and L5-S1 facet arthropathy. [AR 653–654].

34. Defendant points out that the record shows no opinion by CJ regarding Plaintiff's inability to work full-time at any time after 2016. Def. Resp. at 5

**Dr. Matthew Chan ("MC")**

35. In April 2013, Aetna chose MC—a preventative and occupational medicine physician—to perform a physical examination and "Fitness for Duty Evaluation" on

1 Cohen. [AR 2563, 2565–2571]. MC restricted Cohen to working 4 hours a day and
2 found the restriction to be "permanent." [AR 2563]. He described Cohen's "current"
3 diagnosis as thoracic outlet syndrome. [AR 2565]. MC concluded that Cohen's then
4 modified work hours were "appropriate and medically necessary." [AR 2569].

**Dr. Stephen Barkow ("SB")**

36. SB—a pain management physician—treated Cohen from 2014 until SB's death in 2018. [AR 665].
37. SB diagnosed Cohen with Raynaud's syndrome, other intervertebral disc degeneration (lumbar region), other cervical disc degeneration, brachial plexus disorders, radiculopathy (thoracic and cervical regions), and cervicalgia. [AR 667].
38. SB prescribed monthly trigger point injections through July 2018. [AR 668].
39. In May of 2018, SB ordered a full spine MRI for Cohen. [AR 794]. It revealed persistent mild spinal stenosis and moderate-severe left neural foraminal stenosis. [AR 795]. The report indicated "[f]indings are similar in configuration compared with 6/4/16 although disc height loss at C5-C6 has slightly advanced compared with the previous examination." [*Id.*].
40. Defendant points out that the record shows no opinion by SB regarding Plaintiff's inability to work full-time at any time after 2016. Def. Resp. at 5.
41. SB did not write a letter in support of Plaintiff's appeal of Aetna's denial of benefits, as he recently passed away. Pl. Br. at 11.

**Dr. Neil Butani ("NB")**

42. In June 2013, NB diagnosed Cohen with multilevel degenerative disc disease with disc protrusions being worst at C4-C5 and C5-C6. [AR 2042].
43. In July 2014, NB diagnosed Cohen with radiculopathy and restricted him to four hours of work a day and recommended the restrictions be permanent. [AR 2472].
44. Defendant points out that the record shows no opinion by NB regarding Plaintiff's inability to work full-time at any time after 2016. Def. Resp. at 5.

9

**Dr. Jonathan Schleimer ("JS")**

45. On October 24, 2016, Cohen saw JS—a neurologist— at the request of CJ. [AR 756]. JS found reduced range of motion in the cervical spine in all directions and positive Tinel's and Phalen's signs at the carpal tunnel. [AR 758].

**Dr. Lawrence Taw ("LT")**

46. LT first began treating Cohen in July 2014. [AR 2199]. In March 2016, LT restricted Cohen to working four hours a day and recommended the restrictions be permanent. [AR 2198]. LT indicated Plaintiff can do "alternate sitting, standing, occasional typing, computer work, short distance driving, [and] light lifting" and expected improvement in 6-12 months. [AR 2199].

47. In June 2017, LT restricted Cohen to working four hours a day and recommended the restrictions last 12 months. [AR 1814]. LT indicated Plaintiff can do "sitting, standing, walking with short breaks, computer work, manual work, administrative work, [and] communicate clearly" and expected improvement in 12 months. [AR 1820].

48. In December 2018, when writing a letter to support Plaintiff's appeal of Aetna's denial of benefits, LT deferred making any specific restrictions as to Cohen's work to "his primary care provider, physical therapist, or independent provider/specialist." [AR 425].

**Dr. Elham Jafarimojarrad ("EJ")**

49. In February 2018, Aetna chose EJ—a board certified in neurology—to perform an IME on Cohen. [AR 728–744]. EJ reviewed Cohen's medical record but omitted MC's 2013 report. [*Id.*].

50. According to Cohen's attorney, EJ only spent 31 minutes with Cohen and the physical examination only took 8 minutes. [AR 752].

51. EJ concluded that due to the bilateral median naturopathy and focal left ulnar neuropathy, Cohen needed to have an ergonomic workstation, and requires an

approximately 30 minute break after 2 hours of computer use. [AR 742–743].

**Dr. Jules David Hip-Flores ("JDH")**

52. In June 2018, Aetna chose JDH—an Orthopedist—to perform a paper review of Cohen's case. [AR 807–814]. JDH opined that "restrictions and limitations were not supported from 06/01/2018 forward as well as the consistency or discrepancies could not be commented in the absence of medical records in the given review period." [AR 811]. JDH then found that "claimant can perform functional tasks/activities (40 hours weekly, 8 hour days) in the given review period without restriction or limitations." [AR 812].

**Dr. Regina Chinsio-Kwong ("RC")**

53. RC first treated Cohen in May 2016. [AR 578]. She saw him several times between 2017 and 2018. [AR 579]. In January 2019, she agreed with the restrictions and limitations imposed by Dr. Chan in April 2013. [AR 580].

**Dr. Julie Sarton ("JS")**

54. JS has treated Cohen for at least 6.5 years. [AR 520]. In January 2019, she opined that Cohen "cannot return to any type of occupation that requires him to sit more than 30 minutes" without accommodations. [AR 522].

**Dr. Neil Patel ("NP")**

55. Aetna retained NP to perform a second paper review of Cohen's claims during his appeal. [310–340]. NP found evidence of C5-6 mild stenosis and moderate to severe left neural foraminal stenosis, among other conditions. [AR 338]. NP opined that Cohen "can sustain full time work capacity" if he limits lifting to 10lbs frequently and 25lbs occasionally, type for up to 15 minutes at a time with a five minute break throughout an 8 hour day, and sit/stand/walk for up to 30 minutes at a time for a total of 6 hours a day. [AR 338–339].

**Dr. William J. Holden ("WH")**

56. Aetna retained WH to perform a psychological paper review during Cohen's appeal.

11

[292–309]. On March 15, 2019, WH found "[f]rom a psychological perspective, fatigue, headaches, and chronic pain as well as anxiety and depression documented in the records reviewed, all would be detrimental to judgment and decision making, complex problem-solving and critical thinking, as well as focus and concentration, when performing sustained activity on a full-time basis. The medical and physical thereapy (sic) records make frequent references to these factors." [AR 306].

57. WH also found "[c]hronic pain, fatigue, headaches, anxiety and depression sometimes or usually in combination, would restrict sustained full-time employment. The claimant has been treatment resistant for many years, despite years of treatment by various providers." [AR 307].

58. Upon receipt of these findings, Aetna claim representative Ashley Carey wrote: "[S]ent report back for correction, peer should only answer questions within the scope of specialty." [AR 6330].

59. Two days after that, on March 20, 2019, WH amended his findings. He found that "[c]linical evidence on file solely from a psychological perspective does not support functional impairment in terms of anxiety and depression of such severity that EE was unable to perform sustained activity on a full-time basis." [AR 288].

60. Further, "[c]hronic pain, fatigue, headaches, anxiety and depression all are interconnected and cannot be separated from each other in this case, except for purposes of analysis. Anxiety and depression are not necessarily significant limitations by themselves, but only in their relation to chronic pain, fatigue and headaches, which clearly have a subjective and psychological component, as well as objective physical components. Reasonable restrictions/limitations for these subjectively experienced symptoms would be 15-30 minute breaks every 90 minutes during the work day. Given the chronic and treatment resistant nature of these conditions, duration of the restrictions/limitations is seen as permanent and enduring." [AR 289–290].

61. In its final denial letter, Aetna only quoted from the second report that included the more specific, lessened restrictions. [AR 5380].

## II.     CONCLUSIONS OF LAW

### A. Legal Standard

62. "In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions . . . may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a)(1). In a "bench trial on the record," the reviewing court must "evaluate the persuasiveness of conflicting testimony" and make findings of fact to determine whether the plaintiff is disabled under the terms of the policy. *See Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999). This review may "consist[] of no more than the trial judge rereading [the administrative record]." *Id.*

63. As the parties agree, the present review of Defendant's denial of ERISA benefits is de novo. Pl. Br. at 16; Def. Br. at 18; *see also Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 673 (9th Cir. 2009).

64. It is a claimant's burden to prove he is entitled to benefits by a preponderance of the evidence. *Oster v. Standard Ins. Co.*, 759 F. Supp. 2d 1172 (N.D. Cal. 2011) ("In an ERISA action, the plaintiff carries the burden of showing, by a preponderance of the evidence, that he was disabled under the terms of the Plan during the claim period."). Indeed, this "court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits . . . ." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).

65. Defendant's initial determination that Plaintiff qualified for benefits under the Policy does not "operate[] forever as an estoppel so that an insurer can never change its mind." *Munoz v. Amtex Construction Mgmnt. Inc.*, 623 F.3d 1290, 1297 (9th Cir. 2010). However, "the fact that the claimant was initially found disabled under the

1    terms of the plan may be considered evidence of the claimant's disability." *Id*. at
2    1296–97.
3   66.   Under the plan, a claimant is considered "totally disabled" if he or she is unable to
4         work at any reasonable occupation, defined as "any gainful activity for which you
5         are; or may reasonably become, fitted by education; training; or experience." [AR 3,
6         16].
7   67.   The Plan further provides that a claimant is not deemed to be working at a reasonable
8         occupation if working at any occupation, full-time or part-time, and "solely due to
9         disease or injury, your income . . . is 80% or less of your adjusted predisability
10        earnings." [AR 3]. Thus, a claimant need not show they are completely incapacitated
11        to be deserving of benefits under the Policy.
12   **B.  De Novo Analysis of Plaintiff's Claim**
13  68.   The Court concludes, after reviewing the record *de novo*, that Plaintiff adequately
14        proved by a preponderance of the evidence that as of July 25, 2018 (when his
15        benefits were terminated), he was "disabled" as defined by the Policy.
16  69.   The Court finds that Plaintiff has met his burden of proof that he is unable to perform
17        any reasonable occupation because he cannot earn more than 80% of his pre-
18        disability earnings given the restrictions that both Cohen's and Aetna's physicians
19        have found medically necessary between 2008 and 2018. These restrictions include
20              a.  Suffering from cervical disc disease, thoracic outlet syndrome,
21                  Raynaud's syndrome, degeneration of several discs, among other
22                  conditions that several doctors have called "complicated." *See e.g.*,
23                  supra ¶¶ 33 (CJ), 45 (JS), 35 (MC-selected by Aetna), 37 (SB), and
24                  42–43 (NB).
25              b.  Working for a maximum of four hours per day recommended by HJ
26                  and LT. Supra ¶¶ 30, 46, 47. The Court notes that LT decided not to
27                  make this recommendation in December 2018. Supra ¶ 48. However,
28

14

     two other doctors—RC and JS—opined in January 2019 that Cohen can only work with the four hour restriction recommended by Aetna's retained doctor (MC) as "appropriate and medically necessary" back in April 2013. Supra ¶¶ 35, 53, 54.

  c. Part time work and limited data entry recommended by ZL at least 14 times between 2009 and 2013. Supra ¶ 31.

  d. Lastly, Aetna's retained physician during Cohen's appeal—NP—opined that Cohen could only sustain full time work capacity if he was restricted to typing 15 minutes at a time with a 5 minute break throughout the workday. Supra ¶ 55.

70. On the other hand, in February 2018 EJ—after an 8 minute physical examination and without viewing MC's 2013 report—concluded the Cohen only needed an ergonomic workstation and a 30 minute break after 2 hours of computer use to work full time. Supra ¶¶ 49–51. Another of Aetna's retained doctors—JDH—found that Cohen could perform tasks for 40 hours a week and for 8 hour days. Supra ¶ 52. Finally, a third Aetna hired physician—WH—found that Cohen's symptoms require 15-30 minute breaks every 90 minutes during the work-day. Supra ¶ 60. This recommendation was made after Aetna sent a prior report back for "correction." Supra ¶ 58.

71. The Court, reviewing all of the medical evidence on the record, finds that Plaintiff has shown by a preponderance of the evidence that he suffers from conditions that result in a loss of functionality that require restrictions that severely limit his ability to work and more likely than not require a maximum of four hours of work a day. These restrictions were approved by several of Cohen's physicians and at least one of Aetna's physicians. In the Ninth Circuit, "an employee who cannot sit for more than four hours in an eight-hour workday cannot perform 'sedentary' work that requires 'sitting most of the time.'" *Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1163

(9th Cir. 2016). Thus, the Court finds that these restrictions mean that Cohen would be unable to work at "any gainful activity for which [he is]; or may reasonably become, fitted by education; training; or experience." [AR 3, 16].

72. The findings of EJ, JDH, and WH that opine to the contrary do not alter this Court's finding because Plaintiff has provided enough evidence to rebut those opinions through doctor's visits, reports, and recommendations from 2008 to as recent as January 2019. This evidence is enough to meet Cohen's burden.

73. Finally, one physician Aetna hired during the appeal—NP—found that Cohen needed a 5 minute break after 15 minutes of typing and could only sit/stand/walk for up to 30 minutes at a time for up to six hours a day. Functionally, this means Cohen would only be able to type 75% of the time and continuously change working positions throughout a six hour work-day. [AR 338–339]. Even under those less restrictive conditions, the Court finds Cohen would be unable to work at "any gainful activity for which [he is]; or may reasonably become, fitted by education; training; or experience." [AR 3, 16].

74. The video footage that Aetna provides also does not rebut the medical evidence in the Administrative Record that compels this Court's findings. As noted above, the footage largely shows Cohen performing routine acts of life that do not contradict the findings of the medical professionals outlined above. Indeed, even the recording of Cohen's light jog does not persuade the Court that his medically reasonable restrictions are not supported by the record. To the extent that Aetna argues otherwise, they overstate the importance of this evidence.

75. The vocational analyses performed by both Cohen and Aetna support the above conclusions. Cohen's analysis concluded that it is "unrealistic to expect any employer to accommodate his sitting restrictions . . . Mr. Cohen meets the definition of disabled from any occupation." [AR 422]. Aetna's 2019 analysis, though premised solely on the restrictions and limitations outlined by NP, do not seem to meet even

those restrictions. Aetna found 3 available jobs within the relevant geographical area, one of which was Cohen's previous job that he was unable to perform without restrictions. [AR 270–271]. The other two occupations—consultant and manager—are labeled as "sedentary" and "are expected to allow a seated posture . . . with the ability to sit/stand as needed." [AR 270]. Nowhere in the analysis, however, does the report confirm that Cohen would be able to take a 5 minute break from typing every 15 minutes and be allowed to change positions from sitting/standing/walking if he hits his 30 minute limit as instructed by NP.

76. After reviewing the administrative record and the parties extensive briefing on this matter, the Court concludes that Aetna improperly denied LTD benefits since July 2018. Further, Cohen has proven he is entitled to those benefits by a preponderance of the evidence.

### III.     CONCLUSION

After considering the parties' arguments, for the reasons explained above, the Court **HOLDS** that Plaintiff shall be awarded past-due benefits and pre-judgment interest through the relevant period under the Policy subject to any applicable offset for Worker's Compensation benefits. Plaintiff's LTD benefits are hereby reinstated going forward. Plaintiff is granted leave to file a motion for attorneys' fees and costs which may be awarded in the Court's discretion pursuant to 29 U.S.C § 1132(g)(1). The Parties shall submit a joint proposed judgment in accordance with this Court's ruling **on or before August 3, 2020.**

DATED:   July 27, 2020

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE